**SUPPRESSED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 14-30177-NJR |
| | ) | |
| vs. | ) | Title 18, United States Code, |
| | ) | Sections 371, 2320(a) and 2. |
| QAIS HUSSEIN a/k/a "Q", | ) | |
| MAJDI ODEH a/k/a "Mike", | ) | Title 7, United States Code, |
| ELSAYED HASSAN a/k/a "Junior" and | ) | Section 2024(b)(1) |
| a/k/a Elsayed I. Mitchell-Hassan, and | ) | |
| HOSSAM AHMED a/k/a "Sam", | ) | Title 26, United States Code, |
| | ) | Section 7206(2) |
| Defendants. | ) | |

**FILED**

**INDICTMENT**

OCT 2 2 2014

**THE GRAND JURY CHARGES:**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

**INTRODUCTION**

At all times relevant:

1.      During the time frame alleged in the indictment, **QAIS HUSSEIN** and **MAJDI**

**ODEH** were brothers operating businesses in East St. Louis, Illinois known as Garden Grill

Market, Inc. and Garden Grill Market II, Inc.  In conducting their businesses, defendants **QAIS**

**HUSSEIN** and **MAJDI ODEH** in agreement, would, and did, hire employees, including

**ELSAYED HASSAN** and **HOSSAM AHMED**, who agreed to participate and did participate in

the illegal trafficking of Supplemental Nutrition Assistance Program (SNAP) benefits.

2.      The United States Department of Agriculture (USDA), Food and Nutrition

Service (FNS), administers SNAP, a federal government benefit program, formerly known as the

Food Stamp Program, which helps qualifying individuals and families buy eligible food items.

1

3.      SNAP benefits are similar to United States currency in that SNAP recipients can purchase food from grocery retailers at the face value of their SNAP benefits. In most states, SNAP benefits are provided to recipients on an Electronic Benefits Transfer (EBT) card that is used like a bank Automated Teller Machine (ATM) card. Recipients receive their food stamp benefits through EBT. The food stamp recipients in Illinois receive an EBT card known as an "Illinois Link" card. Illinois SNAP recipients can use their Illinois Link card at an authorized retailer in any state.

4.      Grocery retailers participate in the SNAP program only with the authorization of the USDA-FNS. Authorized retailers may only accept and redeem SNAP benefits in exchange for the sale of eligible food items. Retailers may not exchange SNAP benefits for cash or ineligible items, such as tobacco products, cellular phones and alcoholic beverages.

5.      During the authorization process, retailers who participate in SNAP are informed of the prohibitions against accepting SNAP benefits for anything other than eligible food items, and are also notified of the sanctions for prohibited activities including criminal prosecution. When participating in SNAP, authorized grocery retailers agree to be held liable for all actions of their employees regarding the federal regulations governing SNAP, including illegal acts of fraud relating to SNAP.

6.      Individuals residing in Illinois apply for SNAP benefits on SNAP application forms. Once eligibility is determined by the state's welfare office, the recipient is then issued an EBT card. Recipients' monthly SNAP benefits are transferred onto their EBT card on a certain day of the month. Their specific pre-determined monthly SNAP allotment is transferred onto the card each month for the period of authorization determined by the state. In order for Illinois

2

SNAP recipients to access their electronic benefits to purchase food, they are required to present their Illinois Link card to a USDA-FNS authorized grocery retailer. Unauthorized retailers cannot accept EBT cards. The Illinois Link cards can only be processed by a specifically-provided and manufactured point-of-sale (POS) terminal designed to accept those EBT cards. After manually entering the information or "swiping" the EBT card through the POS terminal, the SNAP recipient is supposed to enter a personal identification number (PIN) into an attached keypad.

7.     Immediately after the POS terminal receives the information about a recipient's transaction, the system will determine whether to accept or reject the transaction. If the transaction is accepted, funds equaling the transaction dollar amount are electronically reimbursed to the pre-determined bank account of the retailer. SNAP transaction funds from Garden Grill Market, Inc. and Garden Grill Market II, Inc., as alleged herein, were transferred to bank accounts owned and controlled by **QAIS HUSSEIN** and **MAJDI ODEH**. Reimbursement payments made to the retailer for SNAP redemptions are made from federally-funded appropriations.

8.     Once a SNAP transaction has been completed, the POS terminal records the EBT card account number, the date and time of the transaction, the amount debited from the recipient's SNAP card, and the amount of benefits remaining on the card. A two-sheet receipt is printed from the POS terminal. One copy is to be provided to the recipient and one copy is to be kept by the retailer.

9.     Garden Grill Market, Inc. was incorporated in the state of Illinois on October 15, 2009. **QAIS HUSSEIN**, reporting himself as the President of Garden Grill Market, Inc., applied

3

on November 20, 2009, to the FNS for authorization to accept and redeem SNAP benefits at

Garden Grill Market, Inc. On December 18, 2009, FNS authorized Garden Grill Market, Inc. to

accept and redeem SNAP benefits.

10.     Garden Grill Market II, Inc. was incorporated in the state of Illinois on June 25,

2010. **MAJDI ODEH** reporting himself as the President of Garden Grill Market II, Inc., applied

on July 26, 2010, to the FNS for authorization to accept and redeem SNAP benefits at Garden

Grill Market II, Inc.  On August 20, 2010, FNS authorized Garden Grill Market II, Inc. to accept

and redeem SNAP benefits.

11.     On or about December 13, 2009, **QAIS HUSSEIN** applied, reporting himself as

the President of Garden Grill Market, Inc., for authorization to participate in the Illinois

Department of Human Services Women, Infant, and Children (WIC) Program.  The WIC

program is administered by the FNS and its purpose is to provide nutritious foods (primarily

through retail grocery stores), nutrition counseling, and referrals to health care and social services

to pregnant, postpartum, and breastfeeding women, infants, and children up to age five. Eligible

participants of the WIC Program receive Food Instruments and Cash Value Vouchers to purchase

specific food items such as infant formula, infant cereal, eggs, milk, and cheese.  On July 15,

2010, Garden Grill Market, Inc. became an authorized WIC vendor and the FNS reimbursed

Garden Grill Market, Inc. for the value of the WIC vouchers redeemed.

12.     Although listed individually on the above-stated business records, **QAIS**

**HUSSEIN** and **MAJDI ODEH** exercised joint ownership, control and management in the

Garden Grill Market stores and held themselves out as the owners and operators of both stores to

employees and customers.

4

13.     During all times relevant, **QAIS HUSSEIN** and **MAJDI ODEH** were responsible for receiving and accounting for the gross income earned by Garden Grill Market, Inc. and Garden Grill Market II, Inc.

14.     In or about December 2009, **QAIS HUSSEIN** and **MAJDI ODEH** hired Accountant #1 to prepare federal and state tax returns for the Garden Grill Market stores. Accountant #1 dealt with and received information regarding preparation of tax returns by both defendants for both Garden Grill Market stores.

15.     For the 2010 tax year, **QAIS HUSSEIN** and **MAJDI ODEH** had Accountant #1 prepare and file the required federal and state tax returns for Garden Grill Market, Inc. and Garden Grill Market II, Inc. based on false income and expenses figures provided by **QAIS HUSSEIN** and **MAJDI ODEH.**

## COUNT 1

### Conspiracy to Unlawfully Acquire SNAP Benefits

16.     Paragraphs 1 through 13 are incorporated by reference.

17.     From in or about January 2010 through in or about July 2012, in St. Clair County, within the Southern District of Illinois and elsewhere, the defendants,

**QAIS HUSSEIN, MAJDI ODEH, ELSAYED HASSAN and HOSSAM AHMED**

knowingly and willfully conspired and agreed together and with each other, and with persons both known and unknown to the grand jury, to commit an offense against the United States, that is the fraudulent acquisition of approximately $1.6 million in SNAP and WIC benefits that neither they, nor their stores, were entitled, in violation of Title 18, United States Code, Section 371.

5

A.    **MANNER AND MEANS OF THE CONPIRACY**

18.    As part of the conspiracy, the defendants and other members of the conspiracy would use their businesses, Garden Grill Market Inc. and Garden Grill Market II, Inc., to unlawfully acquire SNAP benefits from customers by offering and unlawfully giving cash payments to those customers in return for the electronic transfer of SNAP benefits for well in excess of the cash amount given. In addition, the defendants and other members of the conspiracy would fraudulently accept SNAP benefits for ineligible items such as tobacco and cellular phones.

19.    Essentially, the defendants agreed and caused a pattern and practice of allowing SNAP benefit recipients to obtain cash at a rate of about 50 cents in cash for one dollar in federally subsidized SNAP benefits.

20.    This would generally take place when a person sought to illegally trade SNAP benefits for cash instead of for products that the program was designed to provide. The store employee would then generally ask the customer the amount of benefits on their card and then would agree to illegally pay a certain amount of cash to that person in return for the SNAP or WIC benefits.

21.    In order to conduct the transaction the person or employee would swipe the SNAP benefit EBT card and either enter, or provide, to the employee their personal PIN to transfer electronic payment to the bank accounts of the defendants.

22.    In the case of WIC benefits, the recipient would give WIC vouchers for a cash amount less than the face value of the vouchers.

6

**B.    OVERT ACTS**

23.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Southern District of Illinois and elsewhere:

a)    On December 22, 2010, in furtherance of the conspiracy an employee of Garden Grill Market, Inc. unlawfully paid cash for SNAP benefits having a value of over $100.00.

b)    On March 4, 2011, an unlawful acquisition of SNAP benefits was transacted by an employee of Garden Grill Market Inc., wherein the employee gave a Confidential Informant (CI) of the government, $280 in United States Currency for $541.40 worth of electronic SNAP benefits.  The employee asked the CI if he could keep the SNAP EBT card in order to utilize the SNAP electronic benefits that the employee had paid for in cash.

c)    On March 4, 2011, **QAIS HUSSEIN** and **MAJDI ODEH** took the SNAP EBT card previously described in paragraph (b) above and went to a grocery store in O'Fallon, Illinois where they fraudulently utilized the card to purchase various bulk items.

d)    On July 13, 2011, in furtherance of the conspiracy an employee of Garden Grill Market II, Inc. unlawfully paid cash for SNAP benefits having a value of over $100.00.

7

e)      On July 17, 2012, in furtherance of the conspiracy **HOSSAM AHMED** at Garden

Grill Market II, Inc. unlawfully paid cash for SNAP benefits having a value of over

$100.00.

f)      On July 17, 2012, in furtherance of the conspiracy **ELSAYED HASSAN** at

Garden Grill Market II, Inc. unlawfully paid cash for SNAP benefits having a value of

over $100.00.

In violation of Title 7, United States Code, Section 2024(b)(1); all in violation of Title 18, United

States Code, Section 371.

## COUNT 2

### Aiding and Assisting in the Preparation and Presentation of a False Tax Return

24.      Paragraphs 12 through 15 are incorporated by reference.

25.      On or about August 28, 2011, in St. Clair County, in the Southern District of

Illinois, and elsewhere,

### QAIS HUSSEIN and MAJDI ODEH,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation

to the Internal Revenue Service, a U.S. Corporation Income Tax Return, Form 1120, for the 2010

tax year for Garden Grill Market, Inc.  The return was false and fraudulent as to material matters,

in that the defendants underreported business income to Accountant #1 in the approximate

amount of $338,659.63.

26.      The business income the defendants underreported was the direct reimbursements

from SNAP sales and Women, Infant, and Children (WIC) sales at Garden Grill Market, Inc. in

2010.  As mentioned, SNAP sales are directly reimbursed to a retailer's bank account, which in

this case, the SNAP sales were reimbursed to bank accounts owned and controlled by the defendants. Likewise, the defendants were reimbursed for the value of the WIC vouchers redeemed at Garden Grill Market, Inc.

27.     To prepare and file Garden Grill Market, Inc.'s 2010 Illinois Sales Tax Returns and 2010 Form 1120, Accountant #1 used the income and expense figures the defendants provided verbally, and although requested, the defendants did not provide documentation to support the their figures. The defendants either provided Accountant #1 with specific figures or they provided a percent change in sales from the previous month. Accountant #1 reviewed the sales tax returns and Form 1120 with the defendants prior to submission to the Internal Revenue Service.

The below chart illustrates the calculation for the unreported income:

|  | GGM I |
|---|---|
| 2010 Actual SNAP Reimbursements | $ 395,277.81 |
| 2010 Actual WIC Vouchers Redeemed | $    8,335.82 |
| 2010 Reported SNAP and WIC sales per Illinois Sales Tax Returns | $  (64,954.00) |
| **2010 Unreported Income** | **$338,659.63** |

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT 3

### Aiding and Assisting in the Preparation and Presentation of a False Tax Return

28.     Paragraphs 12 through 15 are incorporated by reference.

29.     On or about August 30, 2011, in St. Clair County, in the Southern District of Illinois and elsewhere,

**QAIS HUSSEIN and MAJDI ODEH,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation

to the Internal Revenue Service, a U.S. Corporation Income Tax Return, Form 1120, for the 2010

tax year, for Garden Grill Market II, Inc. The return was false and fraudulent as to material

matters, in that the defendants underreported business income to Accountant #1 in the

approximate amount of $37,567.31.

30.    The paragraphs under Count 2 are in reference. Garden Grill Market II, Inc. did

not participate in the WIC Program; therefore, the underreported income only consists of the

SNAP sales.

The chart below illustrates the calculation for unreported income:

|  | **GGM II** |
|---|---|
| 2010 Actual SNAP Reimbursements | $ 43,823.31 |
| 2010 Reported SNAP sales per Illinois Sales Tax Returns | $ (6,256.00) |
| **2010 Unreported Income** | **$ 37,567.31** |

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT 4

### Trafficking in Counterfeit Goods

31.    At all times relevant to this Indictment, in St. Clair County, within the Southern

District of Illinois, the defendants

### QAIS HUSSEIN and MAJDI ODEH,

did intentionally traffic in and attempt to traffic in goods, including watches, hats, DVDs and

shirts, knowingly using on and in connection with such goods one or more counterfeit marks,

including spurious marks identical to and substantially indistinguishable from marks owned by

10

Casio, Major League Baseball, the Motion Picture Association of America, Prada, Juicy Couture, Coach, Fendi and Gucci, which marks are and were in use and are and were registered for such goods on the principle registry of the United States Patent and Trademark Office, the use of which counterfeit marks is and was likely to cause confusion, to cause mistake, and to deceive, all in violation of Title 18, United States Code, Sections 2320(a) and 2.

### Forfeiture Allegation

32.     As a result of the commission of the offenses described in Count 1 of this Indictment,

### QAIS HUSSEIN and MAJDI ODEH,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(D); and Title 28, United States Code, Section 2461 any and all right, title, and interest they may have in any property, real and personal, constituting, or derived from, proceeds traceable to defendants' offenses.

The property to be forfeited includes, but is not limited to:

1. $4,337.00 in United States Currency seized from Garden Grill Market, Inc.;

2. $1,585.58 in United States funds seized from U.S. Bank Account No. xxxxxxx0506;

3. $8,729.46 in United States funds seized from U.S. Bank Account No. xxxxxxx6817;

4. $278,000.00 in United States currency seized from the residence of **QAIS HUSSEIN** and **MAJDI ODEH**; and

5. Proceeds of $1,600,000.00 in United States funds.

If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant:

         a. Cannot be located upon the exercise of due diligence
         b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United

States Code, Section 2461.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 1956(c)(7)(D), and

Title 28, United States Code, Section 2461.

**A TRUE BILL**

STEPHEN R. WIGGINTON
United States Attorney
Southern District of Illinois

RANLEY R. KILLIAN
Assistant United States Attorney

WILLIAM E. COONAN
Assistant United States Attorney

Bond Recommendation:

$100,000 secured – Qais Hussein and Majda Odeh

$10,000 unsecured – Hossam Ahmed and Elsayed Hassan

12